UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JESS R. SMITH,

Plaintiff,

v.

THOMAS L'HEUREUX, et al.,

Defendants.

Case No. C18-5427-RBL-TLF

REPORT AND RECOMMENDATION

Noted for May 3, 2019

This matter is before the Court on defendants' Thomas L'Heureux, Michael Wayman, M. Bradt, J. Amsbury, D. Dahne, K. McTarsney, and C.O. McGinnis filing of a "partial motion to dismiss" pursuant to Fed. R. Civ. P. 12(c). Dkt. 20.[1] Plaintiff has brought suit under 42 U.S.C. § 1983 against defendants for alleged constitutional violations related to the following alleged occurrences while he was a prisoner at Stafford Creek Corrections Center (SCCC): an infraction and disciplinary hearing conducted in or around June through August 2016; the processing and investigation of grievances; alleged destruction of "evidence" plaintiff alleges he intended to use in a future action under the Racketeer Influenced and Corrupt Organizations Act (RICO); destruction of plaintiff's personal property including family photographs and his Bible; and, alleged retaliatory drug testing and placement in a "suicide cell" in response to plaintiff's filing of grievances and the exercise of his religion. Dkt. 5. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28

[1] Defendants Sergeant Ellis and C.U.S. Jones have filed an answer in this case but have not moved to dismiss. Dkt. 19. Accordingly, the action shall proceed against these defendants.

U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the undersigned recommends the Court grant defendants' motion and dismiss plaintiff's claims against defendants L'Heureux, Wayman, Bradt, Amsbury, Dahne, McTarsney, and McGinnis.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff is currently an inmate at Coyote Ridge Corrections Center but his claims arise from events which he alleges occurred while he was a prisoner at SCCC. Dkt. 5. Plaintiff's complaint alleges that on February 27, 2016, he was placed in a suicide cell for 48 hours at the request of defendant Jones in retaliation for filing grievances. Dkt. 5, at 11, 34-35. Plaintiff alleges on February 29, 2016, in response to his yelling "glory to God", defendant Ellis violated his rights to freedom of speech and religion by searching his cell, confiscating, and later "hot trashing" his Bible and family photos. *Id.*, at 12-13, 37. Plaintiff alleges defendant Jones also retaliated against him for making this statement by having him cuffed and escorted to the medical unit to perform a drug test. *Id.*, at 35. Plaintiff alleges defendant Jones also pressured him to withdraw a grievance against him related to the above alleged religious retaliation and "hot trashing" of his property in exchange for being "left alone" by the unit staff. *Id.*, at 12-15, 35-36. Plaintiff also alleges defendant Jones conspired with defendant Wayman and inmate Bell (who is not named as a defendant) to infract him in retaliation for his filing grievances. *Id.*, at 36.

Plaintiff claims C/O Sherman, who is not named as a defendant, left "juice packs" in his cell, which plaintiff indicates he believes had been poisoned. *Id.*, at 19-22. Plaintiff states he intended to save the juice boxes to use as evidence in a RICO lawsuit but that in July 2016, defendant McGinnis performed a cell search and confiscated and destroyed the juice packs. *Id.*, at 19-22, 42-43. Plaintiff contends that in June 2016 he was under constant video and audio surveillance while he was in the intensive management unit (IMU) and that he heard voices during that time making "vile" comments and attempting to humiliate him. *Id.*, at 18-19. Plaintiff

alleges defendants McTarsney and Dahne violated his right to due process and right to meaningful access to the courts by failing to properly process or investigate his grievances and "refusing" to allow him to exhaust his grievances. *Id.*, at 33, 45-47.

Plaintiff's allegations against defendants L'Hereaux, Wayman, Bradt, and Amsbury pertain to an infraction he received in or around July 2016 related to an interaction he had with another inmate. *Id.*, at 38-45. A disciplinary hearing related to this occurrence was conducted in August 2016. *Id.*

Specifically, plaintiff alleges defendant Wayman, the Department of Corrections investigator, violated his due process rights by: improperly seizing and "falsely" using a letter he had written to his sister to support a serious infraction report; denying plaintiff notice of the actual charges; fabricating evidence of scissors and razors being found on plaintiff's person and cell and conspiring to plant that evidence; fabricating serious incident reports stating the scissors and razors were found; failing to question the other inmate involved in the incident; failing to follow proper procedures; maliciously prosecuting and falsely reporting violations; and "conspire[ing]" with the hearings officer, defendant L'Heureux, to find him guilty of as many infractions as possible. *Id.*, at 39-40.

Plaintiff alleges defendants Amsbury and Brandt violated his due process rights by preparing false reports stating razors and scissors were found on plaintiff's person and scissors and a bag of unknown substance were found in his cell, and that they conspired with defendant Wayman to fabricate this evidence to support the disciplinary charges against him. *Id.*, at 41-42.

Plaintiff alleges defendant L'Heureux, the disciplinary hearings officer, violated his due process rights by: refusing to recuse himself despite plaintiff's allegation that he had relied on a false statement at a prior hearing; failing to review video evidence favorable to plaintiff; failing

to disclose evidence of mail seized by defendant Wayman and incident reports; failing to provide a continuance for plaintiff to review evidence; failing to provide confidential information and incident reports to plaintiff 24 hours in advance; denying plaintiff's request to present certain questions to defendant Wayman; "punishing" plaintiff based on letters to his sister and misinterpreting those letters and phone conversations at the hearing as threats toward the other inmate involved. *Id.*, at 23-28, 44-45.

DISCUSSION

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Federal Rules of Civil Procedure, Rule 12(b)(6) and Rule 12(c), allow a court to dismiss a complaint for failure to state a claim upon which relief can be granted. *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980) (noting that Rule 12(h)(2) of the Federal Rules of Civil Procedure specifically allows a Rule 12(c) motion based on an alleged failure to state a claim upon which relief can be granted). Where Rule 12(c) is used to raise the defense of failure to state a claim, the Court analyzes a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings utilizing the same standard as a motion to dismiss for failure to state a claim upon which relief can be granted (Fed. R. Civ. P. 12(b)(6)). *McGlinchy v. Shull Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988); *see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (stating standard for motion for judgment on the pleadings); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988) (stating standard for motion to dismiss).

Motions for judgment on the pleadings under Rule 12(c) are proper when, taking all material allegations in a complaint as true and construing them in the light most favorable to the nonmoving party, the moving party demonstrates that it is entitled to judgment as a matter of law. *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003). A motion to dismiss can be

granted only if plaintiff's complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level". *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556, 570). A dismissal for failure to state a claim can be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Balistreri*, 901 F.2d at 699; *Hal Roach Studios*, 896 F.2d at 1550.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While the Court must accept all the allegations contained in a complaint as true, the Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court is to construe

a complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct complained of was committed by a person acting under color of state law, and (b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

## I. Grievance Process – Defendants McTarsney and Dahne

Plaintiff alleges that grievance coordinators McTarsney and Dahne violated his right to due process and his right to meaningful access to the courts by failing to properly process or investigate his grievances and "refusing" to allow him to exhaust his grievances. Dkt. 5, at 33, 45-46. Plaintiff's challenges to the grievance process fail to state a claim upon which relief may be granted.

### A. Due Process

Even during incarceration, prisoners retain their Fourteenth Amendment due process protections. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). In adopting prison regulations, "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). However, there is no constitutional right to a prison grievance system. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988); *Ramirez*, 334 F.3d at 860; *Stewart v. Block*, 938 F.Supp. 582 (C.D.Cal.1996); *Hoover v. Watson*, 886 F.Supp. 410 (D.Del.1995) (*aff'd*, 74 F.3d 1226). If the state elects to provide a

grievance mechanism, alleged violations of the procedures does not give rise to § 1983 claims. *Silva v. Gregoire*, 2007 WL 1814073 at *6 (W.D. Wash. 2007); *Hoover v. Watson*, 886 F.Supp. 410, 418 (D.Del.1995) (*aff'd*, 74 F.3d 1226); *Brown v. Dodson*, 863 F.Supp. 284, 285 (W.D.Va. 1994); *Allen v. Wood*, 970 F.Supp. 824, 832 (E.D.Wash. 1997) (The grievance process is an internal prison process for handling prison complaints and does not involve substantive rights).

Because plaintiff lacks a separate constitutional entitlement to any grievance procedure, plaintiff's claims against defendants McTarsney and Dahne for failing to properly process or investigate his grievances, fail. Therefore, plaintiff has not stated a claim for which relief can be granted for a violation of due process. *See Harris v. James*, 2017 WL 5198196, at *4, 16-cv-05044-BHS-DWC (W.D. Wash., 2017) ("a stand-alone claim based on a deprivation of the grievance procedure does not implicate due process."); *Wise v. Washington State Department of Corrections*, 244 Fed.Appx. 106, 108 (9th Cir. 2007) ("An inmate has no due process rights regarding the proper handling of grievances.").

Furthermore, the Court cannot conceive of any set of additional facts which could be alleged under these circumstances which would cure plaintiff's complaint and state a claim upon which relief can be granted. The Court accordingly finds leave to amend would be futile and is not warranted. *See Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile."); *Arceo v. Salinas*, 2016 WL 1073257, No. 11-cv-2396 (E.D. Cal., Mar. 18, 2016) (plaintiff's claims that defendants failed to process grievances or address grievances in a certain way failed to state a due process claim as a matter of law; dismissal without leave to amend appropriate as amendment would be futile). Accordingly, the undersigned recommends defendants' motion be granted and that plaintiff's due

process claims with respect to the grievance process against defendants McTarsney and Dahne be dismissed with prejudice for failure to state a claim.

**B. Access to Courts**

The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies prior to filing suit. 42 U.S.C. § 1997e(a). However, plaintiff's claim that defendants McTarsney and Dahne have violated his constitutional right to meaningful access to the courts by impeding his ability to exhaust his grievances fails to set forth a cognizable legal theory and thus fails to state a claim.

Under the First and Fourteenth Amendments to the Constitution, state prisoners have a right of meaningful access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, a prisoner must show some actual injury resulting from a denial of access to the courts in order to allege a constitutional violation. *Lewis*, 518 U.S. at 349. An actual injury consists of some specific instance in which an inmate was actually denied meaningful access to the courts. *Id.*, at 350–55.

Here, plaintiff asserts that defendants have "refused" to allow plaintiff to exhaust issues raised in attempts to impede and violate his right to access the court. Dkt. 5, at 33, 44-45. However, plaintiff does not allege defendants' actions have actually denied him meaningful access to the court. In fact, plaintiff's filing of the instant action belies such an argument. Furthermore, even if plaintiff were to allege that defendants' actions somehow prevented him from exhausting his administrative remedies, this would not prevent him from pursing these claims in court because a prison official's failure to respond or to properly process a prisoner's administrative grievance would excuse that prisoner's failure to exhaust his administrative

remedies. *See Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010) (prisoner's failure to timely exhaust administrative remedies is excused when prisoner takes reasonable and appropriate steps to exhaust but is precluded from exhausting through no fault of his own).

Because plaintiff fails to set forth a cognizable legal theory under which defendants' actions caused him actual injury in accessing the court, he fails to state a claim upon which relief may be granted. Furthermore, the Court cannot conceive of any set of additional facts which could be alleged under these circumstances which would cure plaintiff's complaint and state a claim upon which relief can be granted. The Court accordingly finds leave to amend would be futile and is not warranted. *See Hartmann*, 707 F.3d at 1130 ("A district court may deny leave to amend when amendment would be futile."). Accordingly, the undersigned recommends defendants' motion be granted and that these claims be dismissed with prejudice for failure to state a claim.

**II. Access to Courts – Defendant McGinnis**

Plaintiff also alleges defendant McGinnis denied him the right of meaningful access to the courts. Dkt. 5, at 19-22, 42-43. Specifically, plaintiff contends defendant McGinnis destroyed juice packs which plaintiff believed C/O Sherman (who is not named as a defendant) had poisoned and left in plaintiff's cell. *Id.* Plaintiff states he had intended to use these juice packs as evidence in a RICO action. *Id.*

As previously noted, a prisoner must show some actual injury resulting from a denial of access to the courts in order to allege a constitutional violation. *Lewis*, 518 U.S. at 349. To establish he suffered an actual injury, plaintiff must show "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348; *Christopher v. Harbury*, 536 U.S. 403, 415, (2002); *Nevada*

*Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011); *Phillips v. Hurst*, 588 F.3d 652, 655 (9th Cir. 2009). The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and Section 1983 cases. *See Lewis*, 518 U.S. at 353 n. 3, 354-55. "Failure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to [an access to courts] claim." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n. 1 (9th Cir. 2008) (*quoting Lewis*, 518 U.S. at 353 & n. 4).

Here, plaintiff argues defendant McGinnis' alleged destruction of the apple juice packs prevented him from testing them to prove they had been poisoned by C/O Sherman, and from using them as evidence to support a RICO claim. Dkt. 5, at 19-22, 42-43. However, plaintiff has failed to show actual injury. In order to state a viable access to courts claim, plaintiff must state the underlying claim, in accordance with Federal Rule of Civil Procedure 8(a), and demonstrate the case is arguable or non-frivolous. *Christopher*, 536 U.S. at 416-18 ("Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant[]" and must be "described well enough to apply the 'nonfrivolous' test and show that the 'arguable' nature of the underlying claim is more than hope."); *see Nash v. Tiapula*, 304 Fed.Appx. 479, 479 (9th Cir. 2008).

The RICO Act provides "a private civil action to recover treble damages by any person injured in his business or property by reason of a violation of [18 U.S.C.] section 1962." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985). Section 1962 makes it unlawful for "'any person' […] to use money derived from a pattern of racketeering activity to invest in an enterprise, to acquire control of an enterprise through a pattern of racketeering activity, or to conduct an enterprise through a pattern of racketeering activity." 18 U.S.C. §§ 1962(a)–(c).

"Racketeering activity" consists of commission of a predicate act, as defined in 18 U.S.C. § 1961(1), including "any act or threat involving murder[.]" 18 U.S.C. § 1961(1)

Here, plaintiff alleges that C/O Sherman may have poisoned the apple juice containers and this would have constituted "attempted murder" under 18 U.S.C. § 1961(1); plaintiff further alleges that "[a]ttempted murder and mail theft, under 28 U.S.C. § 1341 and 1701, would raise a viable RICO civil claim because [plaintiff's] personal business, in prison as a jailhouse lawyer and [plaintiff's] personal property of the seized mail and Bible have been injured[.]" Dkt. 5 at 42-44.

Plaintiff offers no facts beyond pure speculation and conclusory allegations, either in his complaint or in opposition to defendant's motion, to support his assertion that C/O Sherman poisoned the juice packs, or to explain how his allegations make out the elements of a RICO claim. For instance, plaintiff offers no facts or explanation as to how defendant McGinnis, or anyone else, used money derived from a pattern of racketeering activity to invest in an enterprise, acquired control of an enterprise through a pattern of racketeering activity, or conducted an enterprise through a pattern of racketeering activity. 18 U.S.C. §§ 1962(a)–(c). As plaintiff has failed to allege any facts to show the underlying cause of action (the RICO claim) is non-frivolous or arguable, and has failed to offer any facts beyond pure speculation that C/O Sherman attempted to murder plaintiff by leaving poisoned apple juice packs in his cell, plaintiff's claim should be dismissed.

Furthermore, there is no indication that plaintiff's complaint can be saved by amendment. Plaintiff has not suggested an amendment, or made an argument in opposition to the instant motion, that indicates he could provide additional facts that might state a non-frivolous or arguable claim. *See Hartmann*, 707 F.3d at 1130. Accordingly, the Court recommends

defendants' motion to dismiss be granted and plaintiff's access to courts claim against defendant McGinnis by dismissed with prejudice for failure to state a claim.

**III. Infraction – Loss of Earned Time Credits**

Plaintiff also alleges defendants L'Hereaux, Wayman, Bradt, and Amsbury, violated his due process rights in the infraction and disciplinary hearing process in several ways. For instance, plaintiff alleges defendants violated his due process rights by fabricating and providing false evidence, failing to properly notify him of the evidence against him, and failing to recuse from the process. Dkt. 5, 23-45. As a result of his conviction at the disciplinary hearing, plaintiff received a sanction of five lost earned-time credits. Dkt. 5, at 122.

The Court finds plaintiff's cause of action for alleged due process violations in the disciplinary hearing is not cognizable -- he has not shown the disciplinary sentence, namely the revocation of his earned-time credits, has been invalidated.

In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the United States Supreme Court held that "[e]ven a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." "If the court concludes that the challenge would necessarily imply the invalidity of the judgment or continuing confinement, then the challenge must be brought as a petition for a writ of habeas corpus, not under § 1983." *Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997) (*quoting Edwards v. Balisok*, 520 U.S. 641 (1997)). The holding in *Heck* is also referred to as the "favorable termination" doctrine. *Muhammad v. Close*, 540 U.S. 749, 751 (2004) ("where success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant

must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence.").

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the United States Supreme Court extended the favorable termination doctrine "to prison disciplinary actions that implicated the prisoner's term of confinement." *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003) (*citing Edwards*, 520 U.S. at 643-44). "[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

In *Edwards*, a prisoner brought suit under § 1983 challenging the procedures used in a disciplinary hearing. *Edwards*, 520 U.S. at 643. The Court held that the prisoner's § 1983 suit was not cognizable because the alleged due process defects in the disciplinary hearing, if established, would "necessarily imply the invalidity of the deprivation of his good-time credits." *Edwards*, 520 U.S. at 643, 646; *see Heck*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (a claim for damages resulting from the revocation of good time credits is premature until the revocation of good time credits is invalidated). The same principle set forth in *Edwards* with respect to good-time credits applies with respect to the deprivation of earned-time credits because both implicate the duration of confinement.[2] *See, e.g.*, *Payment v. Fraker*, No. C13-5547BHS, 2014 WL 1685914, at *7 (W.D. Wash. Apr. 29, 2014) (plaintiff's 1983 cause of

---

[2] "An offender who is committed to the custody of the DOC may have the term of confinement imposed by the sentencing court reduced through the application of earned release time credits. Earned release time is comprised of both good conduct time and earned time credits." *Wise v. Kenny*, 2009 WL 3013568, at *3 (W.D. Wash., Sept. 16, 2009). Good conduct time rewards good behavior. *See In re Pers. Restraint of Forbis*, 150 Wash.2d 91, 98, 74 P.3d 1189 (2003). Earned time rewards good performance and is awarded to offenders who participate in approved programs including work and education. *See id*.

action for damages for alleged due process violations in a disciplinary hearing accrued only when his earned time was restored and his infractions expunged); *Wise v. Washington State Dep't of Corr.*, 244 F. App'x 106, 109 (9th Cir. 2007) (The district court properly dismissed without prejudice plaintiff's claim that his due process rights were violated by disciplinary proceedings that resulted in the loss of good time and earned time credits because plaintiff failed to show that the results of the disciplinary hearings were invalidated).

The Court finds judgment in plaintiff's favor on this claim would necessarily imply the invalidity of the loss of his earned-time credits and, as such, this claim is not cognizable.[3] Accordingly, the Court recommends defendants' motion (Dkt. 20) be granted and that plaintiff's due process claims related to the infraction and disciplinary hearing against defendants L'Hereaux, Wayman, Bradt, and Amsbury, be dismissed *without prejudice* for failure to state a claim.[4]

---

[3] The Court notes that plaintiff argues that he did not have any good-time or earned-time credits at the time the disciplinary sentence of five days lost earned-time credits was imposed. Dkt. 22, at 4-7. Thus, plaintiff argues that restoring the five days of earned time would not necessarily guarantee him an earlier release, but would only allow him the opportunity to earn earlier release. *Id.* Plaintiff argues that because restoring his five days of lost earned time "would not necessarily result in an earlier release from incarceration," under *Ramirez v. Galaza*, 334 F.3d 850 (9th Cir. 2003) he should be allowed to proceed with his § 1983 claim. However, *Ramirez* is distinguishable from the instant case. In *Ramirez*, plaintiff's disciplinary sentence did not consist of lost earned-time or good-time credits, thus implicating the length of his confinement. Rather, in *Ramirez*, the disciplinary sentence affected only the *conditions* of the plaintiff's confinement, namely, plaintiff was sentenced to disciplinary detention, loss-of-privileges, and administrative segregation. *Ramirez*, 334 F.3d at 852-853. Here, plaintiff does not dispute that as a result of the disciplinary hearing and infraction he lost five days of earned-time credits and that this affects his ability to secure an earlier release from prison. Thus, unlike in *Ramirez*, the Court finds plaintiff's disciplinary sentence does necessarily implicate the duration of his confinement. Accordingly, pursuant to *Heck* and *Balisok*, plaintiff's § 1983 due process challenge to the disciplinary hearing process is not cognizable unless and until his disciplinary sentence is invalidated.

[4] Because the Court finds dismissal appropriate on this basis it does not reach defendants' other arguments.

CONCLUSION

Based on the foregoing discussion, because plaintiff has failed to state a claim upon which relief can be granted against the moving defendants, the undersigned recommends the Court GRANT defendants' motion (Dkt. 20) and dismiss plaintiff's claims against defendants L'Hereaux, Wayman, Bradt, and Amsbury, regarding alleged violations of his due process rights in the infraction and disciplinary hearing process -- without prejudice; and the remaining claims against defendants Dahne, McTarsney, and McGinnis should be dismissed with prejudice for failure to state a claim.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **May 3, 2019**, as noted in the caption.

Dated this 12th day of April, 2019.

Theresa L. Fricke
United States Magistrate Judge