1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JESS RICHARD SMITH,

                                    Plaintiff,

        v.

SGT. ELLIS, et al.,

                                    Defendants.

No. 3:18-cv-5427-RAJ-TLF

**REPORT AND RECOMMENDATION**
**Noted for: March 12, 2021**

This is a civil rights action brought under 42 U.S.C. § 1983. Plaintiff Jess Richard Smith, who is proceeding *pro se* and *in forma pauperis*, was incarcerated at the Stafford Creek Corrections Center (SCCC) at the time of the alleged incident and is currently an inmate at Coyote Ridge Corrections Center (CRCC). Dkt. 5. Plaintiff and Defendants have moved for summary judgment. Dkts. 44, 48.

The Court, having reviewed Plaintiff's complaint, each parties' motions for summary judgment, and all related briefing, concludes that Plaintiff's motion for summary judgment (Dkt. 48) should be **DENIED** in its entirety and Defendants' motion for summary judgment (Dkt. 44) should be **GRANTED.**

## PROCEDURAL HISTORY

Plaintiff's original complaint named nine defendants: Thomas L'Heureux; Sgt. Ellis; Michael Wayman; M. Brandt; J. Amsbury; D. Dahne; K. McTarsney; CUS Jones; and CO McGinnis. Dkt. 5. The claims against defendants L'Heureux, Wayman, Brandt,

REPORT AND RECOMMENDATION- 1

Amsbury, Dahne, McTarsney, and McGinnis were previously dismissed. Dkts. 20-27. The only remaining claims in this action are against SCCC Correctional Unit Supervisor Greg Jones and Former SCCC Correctional Sergeant Cory Ellis. Dkt. 27.

Plaintiff alleges his constitutional rights were violated when Defendants Ellis and Jones approached his cell on February 27, 2016, after hearing him yell religious praise; they questioned him about drug use and escorted him to the medical unit for urinalysis. Dkt. 5, at 11-12. He claims his rights were further violated when Defendant Ellis subsequently searched his cell, confiscated and then later destroyed his personal Bible which he claims was embedded with family photos as well as personal prayers and hymns Plaintiff had written into the Bible. *Id.*

Plaintiff claims Defendant Jones also violated his rights by holding him in a suicide cell for more than 48 hours on February 27, 2016, in retaliation for filing grievances. *Id.*, at 34-36. He alleges Defendant Jones violated his rights on April 27, 2016, by "threatening" Plaintiff to drop his grievance of religious retaliation in exchange for Defendant Jones telling his officers to "leave [Plaintiff] alone." *Id.* He also claims Defendant Jones "conspired" with previously dismissed defendant Michael Wayman and an inmate Charles Bell to infract Plaintiff for a later interaction he had with inmate Bell in retaliation for pursuing grievances. *Id.*

Plaintiff alleges Defendant Jones' actions violated his rights to: (1) freedom of speech; (2) free exercise of religion; (3) freedom from retaliation; (4) due process; (5) access to courts; and (6) freedom from cruel and unusual punishment. Dkt. 5. Plaintiff alleges Defendant Ellis' actions violated his rights to: (1) freedom of speech; (2) free

REPORT AND RECOMMENDATION- 2

exercise of religion; (3) freedom from retaliation; (4) due process; and (5) the Religious Land Use and Institutionalized Persons Act (RLUIPA). *Id.*

Plaintiff brings his claims against the Defendants in their individual capacities only. *Id.*, at 9. As relief, Plaintiff seeks seven million dollars in damages against defendants Jones and Ellis. *Id.*, at 52.

On May 29, 2020, Defendants filed a motion for summary judgment seeking dismissal of Plaintiff's claims, together with supporting declarations of Corry Ellis and Gregory Jones, and a *Rand* notice to Plaintiff. Dkts. 44, 45, 46, 47. On June 2, 2020, Plaintiff filed a separate motion for summary judgment. Dkt. 48. On June 10, 2020, Plaintiff filed a response to Defendants' motion for summary judgment in which he concedes Defendants are entitled to summary judgment on all claims against Defendant Jones. Dkt. 49, at 1. On June 19, 2020, Defendants filed a combined response to Plaintiff's motion for summary judgment and reply in support of their motion for summary judgment. Dkt. 50.

On November 12, 2020, the Court issued an order requesting supplemental briefing limited to two legal issues related to the destruction of Plaintiff's personal Bible. Dkt. 52. Plaintiff filed a response to the Court's Order on December 1, 2020. Dkt. 53. Defendants filed a supplemental brief and the Declaration of Salina Brown on

REPORT AND RECOMMENDATION- 3

1    December 2, 2020. Dkt. 55. Plaintiff filed a response to Defendants' submission on

2    December 29, 2020. Dkt. 56.[1] Defendants replied on January 8, 2021. Dkt. 57.

3                                          **FACTS**

4        Plaintiff was housed at the Stafford Creek Corrections Center (SCCC) at all times

5    relevant to this action. Dkt. 5. On February 29, 2016, at around 4:30 p.m., Plaintiff states

6    he yelled "Glory to God and Amen" for a "perceived miracle" after learning a relative had

7    recovered and been taken off life support. Dkt. 5, at 11. Shortly thereafter, Plaintiff

8    alleges, Defendant Ellis and Defendant Jones approached Plaintiff asking if he was all

9    right, and whether he was on drugs. Dkt. 5, at 12, 61.

10       According to Defendant Ellis's declaration, he was familiar with Plaintiff's

11   baseline behavior as someone who was "well spoken" and "fluid in his words." Dkt. 45,

12   at 2. On the date in question, Defendant Ellis states he approached Plaintiff after he

13   was "walking around the correctional unit screaming . . . something religious in nature."

14   *Id.* at 3. Defendant Ellis states that yelling is not allowed per unit rules and that yelling

15   was out of the ordinary for Plaintiff. *Id.*

16       When Plaintiff told Defendant Ellis "he was not under the influence but was

17   praising God," Defendant Ellis claims he told Plaintiff "he was allowed to praise God but

18   he could not be so loud and disruptive by yelling in the manner he was." *Id.* Defendant

19   Ellis states that Plaintiff's "eyes were dilated" at the time of the incident and he "was

---

[1] Plaintiff's response included a request to strike two statements in Defendants' supplemental brief that referred to the Bible's utilization for drug use. Dkt. 56 at 2. The Court declines to strike these statements, but has considered only the underlying evidence and declarations, and not any additional characterization of them by the parties.

REPORT AND RECOMMENDATION- 4

having a hard time responding to my questions." *Id.* He further states he noted Plaintiff's behavior was off baseline in that he spoke "very fast and appeared jittery and was not standing still." *Id.* Defendant Ellis states that:

> Correctional staff are trained to be aware of their surroundings to ensure the safety and security of the prison facility. One major way that they do so is to become familiar with the incarcerated individuals and be aware when individuals are off their baseline. This could indicate that the individual is under stress, experiencing mental health issues, or is under the influence. When someone is off their baseline, correctional officers take note because it means that the individual may be unpredictable and volatile, making the facility or that individual unsafe. When I see someone off their baseline, I check on them to see whether they are okay and attempt to dialogue to better assess the situation. After a brief visual and verbal assessment of the individual is completed it can be determined what need an individual may have. An individual who is under the influence or experiencing a medical or mental health issue that goes untreated or unaddressed creates significant safety and medical concerns for the individual as well as the facility.

Dkt. 45, at 2-3. Defendant Ellis asserts that, based upon Plaintiff's off-baseline behavior, he believed Plaintiff was under the influence of drugs. I*d.*, at 3-4. He states that at the time there had been an increase in the introduction of spice, or synthetic marijuana, into the prison and that he was also aware Plaintiff associated with other inmates who were known for drug activity. *Id.*

After Plaintiff denied he was on drugs, Defendant Ellis states he contacted the Lieutenant regarding his observations about Plaintiff's behavior and the Lieutenant authorized and initiated the drug testing procedure pursuant to Department Policy 420.380(V)(C)(1). Dkt. 45, at 2. That policy states in relevant part: "Direct observation

REPORT AND RECOMMENDATION- 5

by an employee/contract staff or reliable source provides reasonable suspicion that an offender has used, possessed, or possesses a drug or alcohol." *Id.* Plaintiff was then escorted to the SCCC medical for urinalysis. Dkt. 5, at 12. Defendant Ellis states in his declaration that drug testing is an important management tool because it acts as a deterrent to drug use in the correctional facility. Dkt. 45, at 4. Plaintiff claims the results of the urinalysis were negative for drugs. Dkt. 5, at 12. Defendant Ellis states that he does not have access to the results of the urinalysis but that in his experience, a negative urinalysis result is not entirely uncommon when an individual has used spice because it is a synthetic substance. *Id.*

Defendant Jones also submits a declaration in which he states that he does not recall being involved in approaching Plaintiff's cell or taking him for urinalysis on February 29, 2016. Dkt. 46, at 3. However, he states that staff approaching an incarcerated individual who they believe is under the influence would be an appropriate response as would be escorting that individual to medical for a urinalysis. *Id.*

While Plaintiff was at SCCC medical, Defendant Ellis states he assisted in searching Plaintiff's unit. *Id.* Defendant Ellis indicates he confiscated several items, including a: (1) broken lamp, (2) power cord, (3) altered bible, (4) altered cassette tape, and (5) altered surge protector. Dkt. 45-1. Defendant Ellis asserts that the altered Bible, surge protector, and cords were confiscated based on the suspicion that they were being used together for drug-use related "arching", an action used to "light something on fire without a match or lighter." Dkt. 45, at 5.

REPORT AND RECOMMENDATION- 6

Defendant Ellis asserts that the altered Bible had a large number, maybe even hundreds, of pages torn out. *Id.* He states in his experience, Bible pages are frequently used as rolling paper for smoking purposes due to the texture and composition of the paper. *Id.* at 6. He also indicates the "power devices had black soot on them and areas where they were melted." *Id.*, at 5. He states, based upon his findings, he strongly believed Plaintiff was using the Bible pages as rolling papers to smoke and the altered surge protector and cords to light something on fire. *Id.* at 6. Defendant Ellis also asserts that "altered property from its original form is not allowed [under Department policy] as it creates safety issues as well as contraband use and/or concealment and allows for the potential of trading among the incarcerated population." *Id.* at 5-6.

Defendant Ellis indicates he filled out a search report related to his search of Plaintiff's cell. Dkt. 45, at 5; Dkts. 45-1, 45-2. The search report is dated February 29, 2016 and contains a section for the "disposition" of the items. *Id.* According to Defendant Ellis, the notations on the search report reflect that Plaintiff's broken lamp was designated to be sent out ("send out") at Plaintiff's request and a JP4 digital player was returned to Plaintiff ("RTO"). *Id.* The search report reflects that the altered Bible, power cord, and power strips were placed in evidence lockers pending investigation ("evid.") and then designated to be "hot trashed." Dkts. 45-1, 45-2.

On March 2, 2016, Plaintiff submitted grievance (No. 16605680) requesting return of his personal Bible. Dkt. 46-1, at 2. The Grievance Coordinator, Kerri S. McTarsney (GC McTarsney), responded on March 7, 2016, stating, "I understand you have all of your property and CUS Jones stated he will ensure you get another Bible."

REPORT AND RECOMMENDATION- 7

Dkt. 46-1; Dkt. 5, at 61. During the time relevant to Plaintiff's claims, Defendant Gregory

Jones was the Correctional Unit Supervisor of the H1 Living Unit at SCCC. Dkt. 46, at 4.

In his declaration, in support of Defendants' motion for summary judgment Defendant

Jones states that he worked with the facility Chaplain to provide Plaintiff a replacement

Bible. *Id.* He indicates he spoke with Plaintiff multiple times about whether he would

accept a replacement Bible, that Plaintiff agreed, and a replacement Bible was

provided. *Id.*; Dkt. 46-2, at 2.

Plaintiff claims that on March 15, 2016, Defendant Ellis disposed of his Bible and

other property "absent a property disposition notice to send out the property." Dkt. 48, at

5. According to Defendant Ellis' declaration and the property disposition form submitted

by Defendants (Dkt 45-2), a property disposition form was filled out on March 15, 2016.

Dkt. 45, at 6.

Defendant Ellis states he does not specifically recall discussing the search and

confiscated property with Plaintiff, but that he and his officers do so as a matter of

practice. Dkt. 45, at 6. He also states the evidence of some property being sent out and

returned to Plaintiff on the cell search report indicates Plaintiff "was provided notice of

the reason the property was confiscated" and "was in fact provided an opportunity to

address the disposition of his property." *Id.*

Defendant Ellis acknowledges that Plaintiff's signature is not on the property

disposition form, but states this could be because "many times incarcerated individuals

refuse to sign these forms or officers may have forgotten to obtain Mr. Smith's

signature." *Id.* Plaintiff denies being asked about the disposition of his property, stating

REPORT AND RECOMMENDATION- 8

the disposition form was just forwarded to him after the fact, and claims he would have directed that his personal Bible be sent out rather than destroyed. Dkts. 48, 49.

On April 12, 2016, Plaintiff filed a kite stating, "[t]he CUS gave me a Bible and requested to drop my grievance. It is not resolved because of a new Bible because I had a special prayers in it written from God and Christ and it should never be hot trashed." Dkt. 46-2, at 2. On April 14, 2016, K. McTarsney responded to the kite informing Plaintiff that he could write an appeal to Level-2, but that he would not have received his Bible back because it was altered. *Id.*

Soon thereafter Defendant Jones was assigned to conduct the investigation for plaintiff's grievance (No. 16605680). Dkt. 46-2, at 2. Defendant Jones indicates in his declaration that he discussed the grievance with Plaintiff on April 26, 2016. Dkt. 46, at 4. He states Plaintiff "expressed frustration that his Bible had been confiscated" but that he "informed [Plaintiff] that the Bible was altered and not allowed per policy" and "at no time did Mr. Smith allege that his bible was not altered." Dkt. 46, at 4. Defendant Jones asserts that he explained to Plaintiff there was nothing more he could do as Plaintiff's personal Bible "was contraband" and had already been replaced. *Id.* He claims that Plaintiff indicated he understood and decided to drop his grievance. Dkt. 46, at 4. He states that at no time did he pressure Plaintiff to drop his grievance. *Id.*, at 5.

On April 26, 2016, Plaintiff wrote a kite (related to Grievance No. 16605680) to GC McTarsney stating, "[p]lease drop this grievance, proceed with Ellis grievance." Dkt. 46-3, at 1. GC McTarsney responded stating "16605880 will be completed as withdrawn at your request. I do not know what you're referring to about Ellis." *Id.* The same day,

REPORT AND RECOMMENDATION- 9

Defendant Jones completed a grievance investigator report (No. 16605680), stating he interviewed Plaintiff and that, "Smith stated he did not wish to pursue this grievance any longer and completed a kite that was addressed to GC McTarsney dropping this grievance." Dkt. 46-4.

On or about June 23, 2016, Plaintiff submitted a re-write of grievance No. 16607182 stating Defendant Ellis forwarded him a property disposition of his Bible and other property without his approval, and that he was told his prior grievance was "inadvertently lost or destroyed." Dkt. 5, at 58. On June 27, 2016, Grievance Coordinator, D. Dahne, replied, "Rewrite was due 4/8/16. This complaint has already been withdrawn and is now beyond timeframes." *Id.* On or about July 6, 2016, Plaintiff appealed the grievance response received June 27, 2016 to Level II. *Id.* at 59. On July 7, 2016, Plaintiff received a response from Level II denying his request due to withdrawal of the complaint on April 8, 2016 due to failure to rewrite as directed. *Id.* On or about August 15, 2016, Plaintiff appealed the grievance response to Level III. *Id.* at 61. The appeal was responded to the same day stating:

> Original complaint withdrawn 4/8/2016. Your rewrite was not received until 7/6/2016 dated by you on 6/30/16. You were informed on 7/15/16 that your Appeal/Rewrite would not be accepted. This information has not changed and this complaint will remain closed. (Not accepted).

Dkt. 5, at 60.

Plaintiff alleges that Defendants' actions in approaching him in response to his yelling religious praise, inquiring about drug use and taking him for a urinalysis violated his rights to freedom of speech and expression and constituted a retaliatory response to

REPORT AND RECOMMENDATION- 10

his religious speech. Dkt. 5. He claims Defendant Ellis violated his right to freedom of speech and substantially burdened his right to freedom of expression under the First Amendment and RLUIPA when he confiscated and destroyed his personal Bible. Dkt. 5, at 3; Dkt. 48, at 9-11.

Plaintiff claims that in addition to feeling fearful about expressing his religious practice in the prison, he cannot recite "holy prayers, sing holy hyms, or read [his] personal religious notes, inked in [his] Bible, ever again." Dkt. 48, at 6. Additionally, Plaintiff alleges that several family photos were embedded within the confiscated and "hot trashed" Bible. Dkt. 48, at 6. Defendant Ellis asserts in his declaration that "Mr. Smith has never said anything to [him] about the alleged loss of any pictures. This lawsuit is the first [he] ha[s] heard of this." Dkt. 45, at 6. There is no reference to personal family photos in the search report or any of Plaintiff's grievances. Dkt. 45-1.

Plaintiff's complaint also alleges Defendant Jones violated his right to be free from cruel and unusual punishment by placing him in a suicide cell where he was forced to sleep on the floor and subject to unsanitary conditions on February 27, 2016. Dkt. 5; Dkt. 48, at 13-14. Defendant Jones asserts in his declaration that he did not place Plaintiff in a holding cell on that date and that Department records show Plaintiff was in the medical unit on that date. Dkt. 46, at 5. He states, under Department policy, as a CUS, he does not have authority to admit or hold someone in the medical unit. *Id.*

REPORT AND RECOMMENDATION- 11

1
2

## LEGAL STANDARDS

**A.  Summary Judgment**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000). A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A plaintiff must "produce at least some significant

REPORT AND RECOMMENDATION- 12

probative evidence tending to support" the allegations in the complaint. *Smolen v.*

*Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

When the Court considers a motion for summary judgment, "[t]he evidence of the

non-movant is to be believed, and all justifiable inferences are to be drawn in [their]

favor." *Anderson v. Liberty Lobby, Inc.*, at 255. Yet the Court is not allowed to weigh

evidence or decide credibility. *Id.* The Court may not disregard evidence solely based

on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir.

2015).

Factual disputes whose resolution would not affect the outcome of the suit are

irrelevant to the consideration of a motion for summary judgment. *Anderson*, 477 U.S. at

248. In other words, "summary judgment should be granted where the nonmoving party

fails to offer evidence from which a reasonable jury could return a verdict in its favor."

*Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1121 (9th Cir. 1995).

**B.    42 U.S.C. § 1983**

To be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show: (i) the

conduct complained of was committed by a person acting under color of state law; and

(ii) the conduct deprived a person of a right, privilege, or immunity secured by the

Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981),

*overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is

not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That plaintiff may have suffered

harm, even if due to another's negligent conduct, does not in itself, necessarily

REPORT AND RECOMMENDATION- 13

demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).

The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Id.* (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

In addition, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983). Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution.

## DISCUSSION

**A.    Religious Praise, Urinalysis, and Initial Seizure of Bible**

**1.    Freedom of Speech**

Plaintiff's complaint alleges that Defendants violated his First Amendment right to freedom of speech when they approached him in response to his yelling "religious praises" on February 29, 2016, subjected him to drug testing, and subsequently confiscated his personal Bible. Dkt. 5, at 35. Plaintiff contends that Defendants actions "chill[ed] and iced [his] exercise of religious speech." Dkt. 49, at 8. Defendants contend that Plaintiff's claims should be dismissed arguing Plaintiff has failed to demonstrate his

REPORT AND RECOMMENDATION- 14

freedom of speech was infringed upon and, even if he could make this showing,

Defendants' actions were reasonably related to legitimate penological interests. Dkt. 44,

at 7.

### a.    Legal Standard

"[A] prison inmate retains those First Amendment rights"—including free

speech—"that are not inconsistent with his status as a prisoner or with the legitimate

penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822

(1974); *see also Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119,

129 (1977). Accordingly, "challenges to prison restrictions that are asserted to inhibit

First Amendment interests must be analyzed in terms of the legitimate policies and

goals of the corrections system." *Pell*, 417 U.S. at 822. Thus, when a prison restriction

impinges on an inmate's constitutional rights, that restriction will be found to be valid if it

is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78,

89 (1987).

To determine the reasonableness of the prison restriction at issue, there are

several factors that are relevant to consider as outlined by the Supreme Court in *Turner*

*v. Safley*, 482 U.S. 78, 89 (1987). *Id.* "First, there must be a 'valid, rational connection'"

between the restriction and "the legitimate governmental interest put forward to justify

it.'" *Id.* (citation omitted). Under this factor, the restriction "cannot be sustained where

the logical connection" between it and "the asserted goal is so remote as to render the

policy arbitrary or irrational." *Id.* at 89-90. The governmental objective or interest also

REPORT AND RECOMMENDATION- 15

"must be a legitimate and neutral one." *Id.* at 90. That is, the particular restriction must operate "in a neutral fashion, without regard to the content of the expression." *Id.*

The second factor "is whether there are alternate means of exercising the right that remain open to prison inmates." *Id.* Thus, "[w]here 'other avenues' remain available for the exercise of the asserted right, . . . courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials . . . in gauging the validity" of the action. *Id.* (citations omitted). The third factor "is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* In other words, "[w]hen accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Id.*

Lastly, "the absence of ready alternatives is evidence of the reasonableness of a prison" restriction. *Id.* On the other hand, "the existence of obvious easy alternatives may be evidence that the" restriction "is not reasonable, but is an 'exaggerated response' to prison concerns." *Id.* Prison officials, however, need not "set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint" to satisfy this factor. *Id.*, at 90-91. In other words, it "is not a 'least restrictive alternative' test." *Id.* Nevertheless, if a prisoner "can point to an alternative that fully accommodates" his or her "rights at de minimis cost to valid penological interests, a court may consider that as evidence" that the governmental action "does not satisfy the reasonable relationship standard." *Id.* at 91.

REPORT AND RECOMMENDATION- 16

### b.    Religious Praise

Here, Plaintiff asserts that his First Amendment free speech rights were violated because defendants prevented him from expressing religious gratitude. Dkt. 49, at 8. Plaintiff acknowledges Defendant Ellis approached him upon speculation of drug use after Plaintiff "prais[ed] his God in a loud manner" and "yell[ed] religious praises." *See* Dkt. 5, at 12; Dkt. 49, at 29. Plaintiff contends this confrontation infringed upon his freedom of speech. Dkt. 49, at 13.

But the evidence shows that Defendant Ellis did not tell Plaintiff he was not allowed to praise God or express religious thanks at all but only that he asked Plaintiff to do so without yelling and disrupting the unit in violation of unit rules. Furthermore, the evidence shows that Defendant Ellis observed atypical and off-baseline behavior by Plaintiff including yelling, inability to stand still, fast rate of speech, dilated eyes, loud voice, and incoherent speech in response to Defendant Ellis' questioning. The evidence shows Defendant Ellis alerted his Lieutenant based on his observation of Plaintiff's off-baseline behavior, not based on the content of Plaintiff's speech, and that the Lieutenant initiated drug testing.

Plaintiff argues that his drug test was ultimately negative, that he was only "on the high of the Holy Spirit" and that defendants "misinterpret[ed]" his excitement over his relative's medical recovery. Dkt. 49, at 7, 10. But even if Defendant Ellis misinterpreted Plaintiff's behavior, this argument does not refute Defendant Ellis's observation that Plaintiff was yelling and behaving erratically and off his baseline behavior; and this, rather than the content of Plaintiff's speech, was the reason for notifying the Lieutenant.

REPORT AND RECOMMENDATION- 17

Plaintiff also does not dispute that Defendant Ellis merely asked him to lower his volume and did not demand Plaintiff stop his religious praise. In sum, there is no genuine dispute of material fact regarding Plaintiff's claim that his speech was restricted in any meaningful way.

Even if the Court assumes, for purposes of analysis, that Defendant Ellis' actions infringed upon Plaintiff's First Amendment right to freedom of speech, the evidence shows Defendant's actions were valid because they were reasonably related to legitimate penological interests. Legitimate penological interests include "the preservation of internal order and discipline, the maintenance of institutional security against escape or unauthorized entry, and the rehabilitation of the prisoners." *Procunier v. Martinez*, 416 U.S. 396, 412 (1974) (footnote omitted). Here, Defendant Ellis states in his declaration that yelling is not allowed per unit rules and that he informed Plaintiff that "he was allowed to praise God but he could not be so loud and disruptive by yelling in the manner that he was." Dkt. 45, at 3.

There is no genuine dispute of material fact regarding the defendant's showing of a valid, rational connection between Defendant Ellis requesting Plaintiff lower his noise level and the legitimate, neutral governmental interest in maintaining internal order, discipline and security in the unit. Moreover, Defendant Ellis informed Plaintiff of an alternative means of expressing himself – by speaking or expressing his religious praise without yelling. It can be inferred from the evidence presented that the impact of permitting inmates on the unit to yell would be disruptive and detrimental to the preservation of internal order and discipline, the maintenance of institutional security.

REPORT AND RECOMMENDATION- 18

Plaintiff offers no facts or evidence, other than conclusory assertions that he must be allowed to yell religious praise, to dispute this, nor does he suggest ready alternatives.

### c.    Confiscation of Plaintiff's Bible

Likewise, Plaintiff's claim that Defendant Ellis' confiscation and destruction of plaintiff's Bible violated his rights to Freedom of Speech under the First Amendment also fails. There is no genuine dispute of material facts regarding Defendants' showing that the Bible, surge protector and power cords were confiscated because they were altered in such a way that suggests they were being utilized to facilitate drug use.

In his declaration, Defendant Ellis asserts that the Bible had a large number, maybe even hundreds, of pages torn out and that in his experience, because Bible pages are thin and not laminated or coated, they are frequently used as rolling paper for smoking purposes. *Id.* at 6. He also indicated the "power devices had black soot on them and areas where they were melted" and that based upon these findings, he strongly believed Plaintiff was using the Bible pages as rolling papers to smoke and the altered surge protector and cords to light something on fire. *Id.* at 6. Defendant Ellis also states that "altered property from its original form is not allowed as it creates safety issues as well as contraband use and/or concealment and allows for the potential of trading among the incarcerated population." *Id.* at 6.

Plaintiff, in opposing Defendants' motion and in support of his own motion for summary judgment, argues the Bible was ripped when he received it and that he did not alter it for purposes of drug use. Dkt. 49, at 15. He also disputes the degree to which the Bible was altered, acknowledging that certain sections were ripped out, but disputing

REPORT AND RECOMMENDATION- 19

that it was hundreds of pages. Dkt. 49, at 30. Yet these arguments do not undermine the evidence that the Bible was, in fact, torn and missing pages, and that Defendant Ellis' actions in confiscating the Bible were reasonably related to the legitimate penological interest of limiting drug use and maintaining safety and security in the prison environment.

The evidence shows a valid, rational connection between Defendant Ellis confiscating Plaintiff's Bible and the legitimate, neutral government interest in preventing drug use and maintaining internal order and security. Moreover, the evidence shows that Defendant Jones provided Plaintiff with a replacement Bible two weeks after his personal Bible was confiscated. Defendant Ellis' statements regarding the use of Bible pages and the other altered items to engage in drug use and the dangers of drug use to the inmate individually and the institution demonstrate there would be a detrimental impact on institutional security if they were not permitted to confiscate such items for investigation. Plaintiff argues his altered Bible did not pose a danger, but his conclusory argument does not undermine the evidence presented by Defendants supporting the validity of their actions.

Plaintiff's complaint also alleges that Defendant Jones violated his First Amendment right to freedom of speech by approaching Plaintiff (along with Defendant Ellis) in response to Plaintiff's religious praise and subsequently escorting him to medical for a urinalysis. Plaintiff has conceded in his response to the motion that Defendant Jones is entitled to summary judgment with respect to all claims against him. Furthermore, none of the arguments or evidence Plaintiff submits in opposition to

REPORT AND RECOMMENDATION- 20

Defendants' motion for summary judgment, or in support of his own motion for summary judgment, raise a question of fact with respect to these claims with respect to either Defendant Jones or Defendant Ellis.

Accordingly, Defendants' motion for summary judgment should be GRANTED and Plaintiff's motion for summary judgment DENIED with respect to Plaintiff's First Amendment freedom of speech claims relating to the Defendants' response to Plaintiff's yelling of religious praise, urinalysis, and initial confiscation of his Bible.

### 2.    Free Exercise

Plaintiff also alleges Defendants violated his First Amendment right to free exercise of his religion when they approached him in response to his yelling "religious praises" on February 29, 2016, subjected him to drug testing, and subsequently confiscated his personal Bible. Dkt. 5, at 35; Dkt. 48, at 11. Defendants argue that Plaintiff's religious practice was not substantially burdened by their actions and, even if it were, their actions were valid because they were reasonably related to a legitimate penological interest. *Id.*

### a.    Legal Standard

To establish his right to freely exercise his religion under the First Amendment has been violated, at the outset plaintiff must establish the particular religious conduct or practice at issue is mandated by his faith. This involves two criteria. First, plaintiff must demonstrate that his "proffered belief" is "sincerely held." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). This initial determination, in other words, requires the Court to determine at the outset whether the exercise of the claimant's religious beliefs alleged

REPORT AND RECOMMENDATION- 21

to have been burdened is mandated by his or her faith. In making that determination, the Court first must decide whether those beliefs are sincerely held by the claimant. Here, defendants do not dispute that Plaintiff's proffered religious beliefs -- and the exercise of writing in the Bible and speaking in prayer, as an element of his faith -- are sincerely held.

Next, plaintiff must show that defendants "burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith." *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997); *Graham v. C.I.R.*, 822 F.2d 844, 850-51 (9th Cir. 1987) (government action burdens prisoner's practice of religion if he or she is prevented from engaging in conduct mandated by his or her faith). "In order to reach the level of a constitutional violation," furthermore, "the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *Freeman*, 125 F.3d at 737 (quoting *Graham*, 822 F.2d at 851). The "relatively short-term and sporadic" intrusions do not constitute a substantial burden on the free exercise of religion. *See Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998).

Even if a restriction does place a substantial burden on a Plaintiff's religious practice, the restriction will be found valid if it is reasonably related to a legitimate penological interest. The right to freely exercise one's religion "is necessarily limited by the fact of incarceration and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). Thus, to establish a violation of the right to freely exercise one's religion, an inmate

REPORT AND RECOMMENDATION- 22

asserting the violation must show the state "burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997) (citing *Turner*, 482 U.S. at 89) (footnote omitted).

In analyzing the legitimacy of regulation of prisoners' religious expression, courts utilize the four *Turner* factors discussed above. *See Turner*, 482 U.S. at 89. First, the prison regulation must have a "valid, rational connection" to the legitimate governmental interest it is furthering. *Id.* Second, the court should consider the availability of alternatives for the prisoner. *Id.* at 90. "The relevant inquiry [here]. . . is not whether the inmate has an alternative means of engaging in the particular religious practice that he or she claims is being affected; rather [the court must] determine whether the inmates have been denied all means of religious expression." *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993) *(citing O'Lone*, 482 U.S. at 351–52). Third, the court should consider the effect of the accommodation on prison staff and other inmates, including consideration of security concerns. *See McCabe v. Arave*, 827 F.2d 634, 637 (9th Cir. 1987). Finally, the fourth factor under *Turner* emphasizes that the absence of ready alternatives is evidence of the reasonableness of a prison regulation. *Turner*, 482 U.S. at 90.

In making the above determination, however, it must be noted that "substantial deference" is to be accorded "to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton*, 539

REPORT AND RECOMMENDATION- 23

U.S. at 132. The burden of proof, furthermore, is not on defendants to establish the validity of the challenged regulation, but plaintiff "to disprove it." *Id.*

### b.    Religious Praise

Plaintiff asserts that his First Amendment right to freedom of religious expression was violated because Defendants prevented him from expressing religious gratitude when they approached him in response to his yelling "religious praises" on February 29, 2016, and then subjected him to a urinalysis. Dkt. 49, at 8. But the evidence shows that Defendant Ellis did not tell Plaintiff he was not allowed to praise God or express religious thanks at all but only that he asked Plaintiff to do so without yelling and disrupting the unit in violation of unit rules.

Plaintiff offers no evidence or facts to indicate that his religious faith mandates that he yell his religious praise and that Defendant Ellis' request that he lower his volume substantially burdened his religious practice. The evidence shows that Defendant Ellis observed atypical and off-baseline behavior by Plaintiff and that Defendant Ellis alerted his Lieutenant based on his observation of that behavior, not based on his religious practice, and that the Lieutenant then initiated drug testing. Plaintiff offers no facts or evidence to indicate that the urinalysis itself substantially burdened his religious practice.

Plaintiff argues that his drug test was negative and that defendants "misinterpret[ed]" his excitement over his relative's medical recovery. Dkt. 49, at 7, 10. But even if Defendant Ellis misinterpreted Plaintiff's behavior as indicating drug use, this argument does not create a genuine dispute of material fact regarding Defendant Ellis's

REPORT AND RECOMMENDATION- 24

observation that Plaintiff was yelling and behaving erratically and off his baseline behavior and that this -- rather than the fact that Plaintiff was yelling religious praise -- was the reason for notifying the Lieutenant. The evidence does not support Plaintiff's claim that his freedom of expression was substantially burdened by Defendants' actions in engaging Plaintiff in conversation about his behavior, asking him to lower his volume, or notifying the Lieutenant of the behavior who then authorized a urinalysis. Rather, the evidence shows that this was at most a short-term temporary intrusion or inconvenience. *See See Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998).

Even if the Court assumes, for purposes of analysis, that Defendants' actions substantially burdened Plaintiff's religious practice, there is no genuine dispute of material fact concerning the Defendants' showing that their actions were valid because they were reasonably related to legitimate penological interests. Evaluating the restrictions under the *Turner* factors, the evidence shows a valid, rational connection between Defendant Ellis requesting Plaintiff lower his noise level and the legitimate, neutral governmental interest in maintaining internal order, discipline and security in the unit.

Moreover, Defendant Ellis informed Plaintiff of an alternative means of expressing his religious right – by speaking or expressing his religious praise without yelling. It can be reasonably inferred from the evidence that the impact of permitting inmates on the unit to yell would be disruptive and detrimental to the preservation of internal order and discipline and the maintenance of institutional security. Plaintiff offers

REPORT AND RECOMMENDATION- 25

no facts or evidence, other than conclusory assertions that his religion requires him to yell religious praise, to dispute this, nor does he suggest ready alternatives.

### c.    Confiscation of Plaintiff's Bible

Plaintiff also contends his First Amendment rights to free religious expression were violated when Defendant Ellis confiscated his personal Bible -- which he claims contained personal hymns and letters to God. Dkt. 5, at 13. Defendants present evidence in support of their motion that Defendant Jones worked with the facility Chaplain to secure a replacement Bible; it was provided to Plaintiff just two weeks after his personal Bible was confiscated. *See* Dkt. 44, at 10; Dkt. 46, at 4. Under the circumstances, this relatively short-term intrusion between the confiscation of Plaintiff's altered Bible due to suspicion it was being utilized for drug use and pending investigation and defendant Jones providing an unaltered replacement Bible does not rise to the level of a substantial burden on the free exercise of religion. *See Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998).

Plaintiff argues that the replacement Bible was insufficient because his personal Bible contained personal hymns and letters to God that he had written into the Bible. But there is no genuine dispute of material fact concerning Defendants' evidence that their actions were valid because they were reasonably related to legitimate penological interests. Evaluating the restrictions under the *Turner* factors, the evidence shows a valid, rational connection between Defendant Ellis confiscating Plaintiff's altered Bible and the legitimate, neutral government interest in preventing drug use and maintaining internal order and security. Defendant Ellis' statements regarding the use of altered

REPORT AND RECOMMENDATION- 26

items to engage in drug use and the dangers of drug use to the inmate individually and the institution demonstrate there would be a detrimental impact on institutional security if they were not permitted to confiscate such items. Defendant Ellis' statements regarding the use of the Bible pages and other altered items to engage in "arching" for purposes of drug use and the dangers of drug use to the inmate individually and the institution demonstrate there would be a detrimental impact on institutional security if they were not permitted to confiscate such items for investigation. Plaintiff argues his altered Bible did not pose a danger, but this conclusory argument does not create a genuine dispute of material fact regarding the evidence presented by Defendants supporting the validity of their actions.

Plaintiff has conceded in his response to the motion that Defendant Jones is entitled to summary judgment with respect to all claims against him. Furthermore, none of the arguments or evidence Plaintiff submits in opposition to Defendants' motion for summary judgment, or in support of his own motion for summary judgment, raise a question of fact with respect to these claims with respect to either Defendant Jones or Defendant Ellis.

Accordingly, Defendants' motion for summary judgment should be GRANTED and Plaintiff's motion for summary judgment DENIED with respect to Plaintiff's First Amendment freedom of expression claims relating to the Defendants' response to Plaintiff's yelling of religious praise, urinalysis, and the initial confiscation of his Bible.

REPORT AND RECOMMENDATION- 27

**B.    Destruction/Failure to Return Bible and Loss of Photos**

**1.    First Amendment - Freedom of Speech and Expression**

Plaintiff also alleges his First Amendment rights to freedom of speech and religious expression were violated when Defendant Ellis destroyed his personal Bible. Plaintiff argues his personal Bible was not a security risk and should have been returned to him or that he should have been given the opportunity to mail the Bible out. *See* Dkt. 49, at 25.

**a.    Substantial Burden**

Defendants present evidence that Plaintiff was provided a replacement Bible approximately two weeks after his personal Bible was confiscated and that Plaintiff agreed to accept the replacement. See Dkt. 46, at 4; Dkt. 49, at 14. Defendants also note that, in addition to his replacement Bible, Plaintiff continued to have available to him the full panoply of prison religious programs, including, among other things, library materials and videos, religious services and ceremonies, and access to the chaplain. Dkt. 55-3 at 10.

Plaintiff, in opposing Defendants' motion and in support of his own motion for summary judgment, states that his personal Bible contained personal prayers and letters to God that he had written into it. See Dkts. 48, 49. He also states that he would recite these personal prayers on a daily basis in his cell and that he is now unable to do so because his Bible has been destroyed. *See* Dkt. 49, at 34, 36. He claims he informed defendants of this fact and that a new Bible would not be an adequate replacement. *Id.*, at 14-15.

REPORT AND RECOMMENDATION- 28

Plaintiff's arguments demonstrate an impact upon his religious experience from the loss of his personal Bible but fall short of the religious restrictions courts have recognized as sufficient to meet the "substantial burden" requirement of a First Amendment claim. To state a claim, a prisoner "must show the [defendants] burdened the practice of [his] religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." *Freeman*, 125 F.3d at 735. The First Amendment does not reach the "incidental effects" of otherwise lawful government programs "which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs." *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450-51 (1988).

While Plaintiff's religious experience may be diminished without access to his altered Bible, he has not come forward with any facts demonstrating he has in any way been "coerced into acting contrary to [his] beliefs." *Id.* Here, Plaintiff was deprived of access to his preferred Bible, but was given a substitute. This is sufficient to meet the requirements of the First Amendment. Under similar circumstances, the Seventh Circuit held that depriving a prisoner of his personal Bible containing commentary important to his religious practice did not substantially burden the practice of his religion when he was provided an alternative Bible, albeit without the same commentary. *Tarpley v. Allen Cty., Indiana*, 312 F.3d 895, 899 (7th Cir. 2002) ("Prisons are only required to make reasonable efforts to provide an opportunity for religious practice. . . . Under the circumstances here, giving [Plaintiff] a copy of the NIV Bible that he could use in his cell

REPORT AND RECOMMENDATION- 29

offered him the essential material for his religious studies."). *See also Dunlap v. Losey*, 40 F. App'x 41, 43 (6th Cir. 2002) (deprivation of plaintiff's personal Bibles "while making the practice of his religion somewhat more difficult, did not coerce him into action contrary to his beliefs").

### b.    Legitimate Penological Interest

Even if Plaintiff could establish that destruction of his Bible imposed a substantial burden on his religious practice, Defendants have submitted evidence that removing Plaintiff's access to the altered Bible was valid because it was reasonably related to a legitimate penological interest. Specifically, Defendants state that that Plaintiff's Bible was "severely altered," with a large number of pages torn out— "maybe even hundreds of pages." Dkt. 45, at 5. This alteration rendered Plaintiff's Bible contraband which Plaintiff was not permitted to possess, regardless of the nature of Plaintiff's use of it. Dkt. 44, at 16. Pursuant to DOC Policy 440.000:

> The following items will be considered contraband when found in an offender's possession and will be disposed of per the Disposition section of this policy:
>
> 1.    Any items found in the offender's possession having distorted or altered markings and/or are substantially modified from the manufacturer's original configurations.

Dkt. 55-1, at 4; *see also* Dkt. 55-2, at 5 (identical provision in SCCC Operational Memorandum).

Because prison regulations prohibit all possession of altered items, Plaintiff is forbidden any access to his altered Bible in his cell. *Id.* Thus, even if Defendants had not destroyed the Bible but instead sent it out (as Plaintiff claims should have been

REPORT AND RECOMMENDATION- 30

done), Plaintiff would not have access to the notes and commentary it contains. For purposes of analyzing Plaintiff's Free Exercise claim, then, there is no difference between destruction and removal of the Bible; Plaintiff loses access to his commentaries in any event.

As discussed in Section A (2) (c) above, Defendants have demonstrated their policy of permanently removing altered personal items from prisoners' cells is rationally connected with the legitimate government interest in preventing drug use and maintaining security, and allowing exceptions to the contraband rule would undermine these goals.

Accordingly, Plaintiff's motion for summary judgment should be DENIED and Defendants' motion GRANTED with respect to Plaintiff's First Amendment claim against Defendant Ellis for the destruction of Plaintiff's Bible.

Plaintiff has conceded in his response to the motion that Defendant Jones is entitled to summary judgment with respect to all claims against him. Furthermore, none of the arguments or evidence Plaintiff submits in opposition to Defendants' motion for summary judgment, or in support of his own motion for summary judgment, raise a question of fact with respect to Plaintiff's First Amendment freedom of speech and freedom of expression claims related to the destruction of Plaintiff's Bible as against Defendant Jones. Accordingly, Defendants' motion for summary judgment should be GRANTED and Plaintiff's motion for summary judgment DENIED with respect to Plaintiff's First Amendment claims against Defendant Jones for the destruction of Plaintiff's Bible.

REPORT AND RECOMMENDATION- 31

### 2.    Due Process

Plaintiff also claims his Due Process rights were violated because he was not consulted about the disposition of his property or given the opportunity to mail his personal Bible out prior to its destruction. Dkt 5. Defendants argue that Plaintiff does not have a property interest in contraband, that the notations on the cell search report indicate that Plaintiff was given the opportunity to address the disposition of his property, and that Plaintiff fails to establish a Due Process violation because a meaningful post-deprivation remedy was available to him. Dkt. 44.

### a.    Legal Standard

The Due Process Clause protects prisoners from being deprived of property without due process of law, *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974) (citations omitted), and prisoners have a protected interest in their personal property, *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). Nevertheless, the due process rights of prisoners "are not absolute; they are subject to reasonable limitation or retraction in light of the legitimate security concerns of the institution." *Bell v. Wolfish,* 441 U.S. 520, 554 (1979).

Furthermore, only an authorized, intentional deprivation of property is actionable under the Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). An authorized deprivation occurs pursuant to "state law, regulation, or institutionalized practice," and the normal pre-deprivation hearing is required to satisfy due process. *Haygood v. Younger*, 769 F.2d 1350,1357 (9th Cir. 1985) (en banc), *cert. denied,* 478 U.S. 1020 (1986) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982)). An

REPORT AND RECOMMENDATION- 32

unauthorized intentional or negligent deprivation of property by a state employee does not constitute a Fourteenth Amendment violation if a meaningful post-deprivation remedy for the loss is available under state law. *Hudson*, 468 U.S. at 534; *Haygood*, 769 F.2d at 1357 (internal citation omitted) (unauthorized deprivations do not occur pursuant to a "state law, regulation, or institutionalized practice[ ]"); *Pennick v. Chesterman*, No. 318CV05331RJBDWC, 2019 WL 2996706, at \*4 (W.D. Wash. June 10, 2019), *report and recommendation adopted*, No. 318CV05331RJBDWC, 2019 WL 2995541 (W.D. Wash. July 8, 2019).

### b.    Property Interest

Defendants argue that Plaintiff's due process claim fails because he has no protected property interest. Defendants' evidence establishes that Plaintiff's Bible was extensively altered and therefore, under Policy 440.000, constituted "contraband." Dkt. 45, at 14; Dkt. 55-1, at 8–9. The policy prohibits the possession of contraband. *Id.*

Where a prisoner has no right to possess contraband, he has no due process claim for its removal or destruction. A prisoner is "not entitled to hearing before seizure of contraband items." *Hentz v. Ceniga*, 402 F. App'x 214, 215 (9th Cir. 2010) (affirming summary judgment dismissing due process claims). *See also Lyon v. Farrier*, 730 F.2d 525, 527 (8th Cir. 1984), ("We find without merit the argument that destruction of a painting possessed by [plaintiff] constituted a deprivation of property without due process of law. Because the property was contraband, [plaintiff] cannot seriously argue that he had a protected property interest in it. Therefore, the destruction of the painting did not implicate any due process concerns."); *Steffey v. Orman*, 461 F.3d 1218, 1221

REPORT AND RECOMMENDATION- 33

(10th Cir. 2006) ("here we conclude that Mr. Steffey had no property right protected by the Fourteenth Amendment to receive a contraband money order while in prison").

Plaintiff's due process claims regarding the destruction of his altered Bible should be dismissed because, under prison regulations, the Bible was contraband; it is therefore not protected by the Fourteenth Amendment.

###### c.    Process

Defendants contend that even if Plaintiff were deemed to have a property right in his altered Bible, he was not deprived of due process.

Defendants argue that the prison's policies for contraband and evidence handling (DOC Policy 420.375) and disposition of personal property (DOC Policy 440.000) meet due process requirements. Dkt. 54 at 11–12. Those policies provide that contraband seized from a cell that triggers an infraction be documented in a Search Report form and disposed of pursuant to Policy 440.000—which provides that a prisoner has 90 days to dispose of the property (including mailing it out) using a Property Disposition form. Dkt. 55-4 at 3–4; Dkt. 55-1 at 8–9. If a prisoner fails to pay for shipment or fails to designate an offsite recipient, the property is either donated or destroyed. Dkt. 55-4 at 9. Finally, SCCC has a facility appeal process for any disputes regarding the disposition of contraband. Dkt. 55-2 at 10. The Court concludes that the process outlined in these documents, which provides notice and an opportunity to be heard before the property is disposed of would, if followed, meet due process requirements. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

REPORT AND RECOMMENDATION- 34

1
2
3
4
5
6
7
8
9

Defendants contend that they followed their process, including providing Plaintiff a copy of the Search Report and completing a Property Disposition Form—although Defendants acknowledge that the Property Disposition Form does not include Plaintiff's signature. Dkt. Dkt. 45, at 6–7; Dkt. 45-1; Dkt. 45-2. But Plaintiff alleges that Defendants failed to allow him to address the disposition of his property at all, and that he would have chosen to mail his Bible out rather than have it destroyed. *See* Dkt. 49, at 14-15, 34, 36. There is therefore a disputed issue of fact regarding whether Defendants properly followed their procedures.

10
11
12
13
14
15
16
17
18
19
20
21
22
23

This dispute is not material, however. Even if Defendants failed to follow their process, thus rendering their destruction of the Bible unauthorized, Plaintiff had an adequate post-deprivation remedy. *Hudson*, 468 U.S. at 534. the State of Washington provides a meaningful post-deprivation remedy for the intentional or negligent loss of property by state agents and employees by allowing for a suit in Superior Court once a person has completed the state's tort claim process. *See Magana v. Morgan*, 2016 WL 6111131, at *3 (W.D. Wash. Sept. 14, 2016) (citing *Jeffries v. Reed*, 631 F. Supp. 1212, 1216 (E.D. Wash. Mar. 27, 1986); RCW 4.92.090-.100; RCW 72.02.045(3)). Plaintiff contends that the tort process is inadequate but complains only that he did not receive the result he desired. Dkt. 56 at 7–9. The Ninth Circuit has held that Washington's tort claim statute satisfies due process. *Wright v. Riveland*, 219 F.3d 905, 918 (9th Cir. 2000).

24
25
26

Defendants' motion for summary judgment should be GRANTED, and Plaintiff's motion for summary judgment should be DENIED with respect to Plaintiff's procedural

REPORT AND RECOMMENDATION- 35

Due Process claim pertaining to his Bible.

### 3.    Photos

Plaintiff also claims Defendant Ellis violated his Due Process rights by depriving him of his pictures that were in the Bible. Defendant Ellis denies having any knowledge of the pictures. Dkt. 45, at 6. He denies confiscating the pictures indicating that he would have placed them on the search report if he had or left them somewhere obvious in the cell if they were acceptable. *Id.* With respect to the pictures, the record establishes that, accepting Plaintiff's claim that they did exist, Plaintiff was not deprived of them pursuant to a state law, regulation, or institutionalized practice. As such, Plaintiff has a meaningful post-deprivation remedy with respect to the pictures and does not state a procedural Due Process claim. Accordingly, Defendants' motion for summary judgment should be GRANTED, and Plaintiff's motion for summary judgment should be DENIED with respect to Plaintiff's procedural Due Process claim pertaining to his pictures.

Plaintiff has conceded in his response to the motion that Defendant Jones is entitled to summary judgment with respect to all claims against him. Furthermore, none of the arguments or evidence Plaintiff submits in opposition to Defendants' motion for summary judgment, or in support of his own motion for summary judgment, raise a question of fact with respect to Plaintiff's Due Process claims against Defendant Jones. Accordingly, Defendants' motion for summary judgment should be GRANTED and Plaintiff's motion for summary judgment DENIED with respect to Plaintiff's Due Process claims against Defendant Jones.

REPORT AND RECOMMENDATION- 36

## C.    Retaliation

To prevail on a retaliation claim, a plaintiff must allege and prove the defendants retaliated against him for exercising a constitutional right and the retaliatory action did not advance legitimate penological goals or was not narrowly tailored to achieve such goals. *Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997). A prisoner suing a prison official under § 1983 for retaliation for engaging in protected speech must allege "the type of activity he engaged in was protected under the first amendment and that the state impermissibly infringed on his right to engage in the protected activity." *Rizzo v. Dawson,* 778 F.2d 527 (9th Cir. 1983).

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "Mere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) (affirming grant of summary judgment where no evidence that defendants knew of plaintiff's prior lawsuit or that defendants' disparaging remarks were made in reference to prior lawsuit). To state a claim for retaliation, the plaintiff must allege facts that establish an actual link between his exercise of constitutional rights and the alleged retaliatory action. *See Pratt v. Rowland*, 65 F.3d 802, 807-810 (9th Cir. 1995).

REPORT AND RECOMMENDATION- 37

Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Pratt*, 65 F.3d at 806 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* (quoting *Sandin*, 515 U.S. at 482). Prisons have a legitimate goal of preserving internal order and discipline. *See Rizzo,* 778 F.2d at 532.

### 1. Retaliation Claims Related to Urinalysis, Cell Search, Confiscating and Destroying Bible and Other Property

Plaintiff complaint alleges Defendants retaliated against him for praising God by removing him from his cell, escorting him to the medical unit and subjecting him to a urinalysis, searching his cell, and confiscating and subsequently destroying his Bible and other property.

To prevail on his retaliation claim, Plaintiff must show that his protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct." *Soranno's,* 874 F.2d at 1314. To show the presence of this element on a motion for summary judgment, [the plaintiff] need only "put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the prison official's] intent …." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir.2003). Further, to prevail on a retaliation claim, a prisoner must show that the challenged action "did not

REPORT AND RECOMMENDATION- 38

reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).

As discussed above, the evidence shows the content of Plaintiff's speech or religious expression were not the substantial or motivating factor behind Defendants' actions in confiscating the Bible but, rather, their actions were motivated by and related to the legitimate penological interest of limiting drug use in prison, protecting those who may be under the influence of drug use, and maintaining institutional security. As Defendant Ellis states in his declaration, his actions in notifying his Lieutenant (who then authorized the urinalysis) were prompted by his observation of Plaintiff's off-baseline behavior of yelling, "dilated eyes", "a hard time responding to my questions", "fast" speech, and "jittery" behavior and his concern that Plaintiff's unusual behavior was the product of drug use. Dkt. 45, at 3. While Plaintiff denies drug-use he does not substantially dispute Defendant Ellis's observations of his behavior.

Defendant Ellis further states that his actions in searching Plaintiff's cell and confiscating his Bible and other property were likewise related to the concern that Plaintiff was on drugs and utilizing those items to engage in drug use. As discussed above, Defendant Ellis details the nature of the alterations to Plaintiff's Bible and his belief, based on his experience and the presence of other altered property in Plaintiff's cell, that Plaintiff was using the altered Bible and those other items to engage in drug use.

Furthermore, to the extent Plaintiff intends to allege that the destruction of his personal Bible, as distinguished from the initial seizure, was done in retaliation for his

REPORT AND RECOMMENDATION- 39

religious expression or speech, he offers no facts or evidence to establish an actual link between the exercise of his constitutional rights and the destruction of the Bible. *Wood*, 753 F.3d at 905 ("Mere speculation that defendants acted out of retaliation is not sufficient" to establish a retaliation claim); *see Pratt*, 65 F.3d at 807-810.

Plaintiff has conceded in his response to the motion that Defendant Jones is entitled to summary judgment with respect to all claims against him. It also appears that Plaintiff concedes Defendants are entitled to summary judgment with respect to his claims related to the urinalysis. Dkt. 49, at 4. Furthermore, none of the arguments or evidence Plaintiff submits in opposition to Defendants' motion for summary judgment, or in support of his own motion for summary judgment, raise a question of fact with respect to the retaliation claims against either Defendant Jones or Defendant Ellis related to the urinalysis, cell search, and confiscation and subsequent destruction of Plaintiff's Bible.

Accordingly, Defendants' motion for summary judgment should be GRANTED and Plaintiff's motion for summary judgment DENIED with respect to these claims.

### 2. Retaliation Claims Related to Defendant Jones' Alleged Involvement in Infraction and Grievances

Plaintiff's complaint alleges that Defendant Jones pressured him to drop his grievance against him and allegedly conspired with Investigator Michael Wayman (who was previously dismissed as a defendant) to later infract Plaintiff. Dkt. 5.

Defendant Jones asserts in his declaration that he did not pressure Plaintiff to drop his grievance against him. Dkt. 46. He states he spoke with Plaintiff as part of the investigation related to Plaintiff's grievance regarding his confiscated Bible. *Id.*

REPORT AND RECOMMENDATION- 40

Defendant Jones states that Plaintiff expressed his frustration over the loss of his personal Bible. *Id.* Defendant Jones states that he told Plaintiff that the Bible was altered and not allowed per policy, that he had provided Plaintiff a replacement Bible, and that there was nothing more he could do. *Id.* Defendant Jones states that Plaintiff indicated he understood and stated he did not wish to pursue the grievance any longer. *Id.*

Defendants also move for summary judgment regarding Plaintiff's claim that Defendant Jones "conspired" with Investigator Wayman to infract Plaintiff. Defendants argue they are entitled to summary judgment on this claim as Plaintiff fails to allege any facts beyond his conclusory allegation that Defendant "conspired" with Investigator Wayman or that he was involved in any way with the infraction. Defendants note that Defendant Jones is not listed on any of the infraction paperwork and that Plaintiff cannot produce any evidence that Defendant Jones personally participated in any way regarding Plaintiff's infraction.

Plaintiff has conceded in his response to the motion that Defendant Jones is entitled to summary judgment with respect to all claims against him. As Plaintiff indicates he does not dispute Defendants' evidence on these issues, Defendants' motion for summary judgment should be GRANTED and Plaintiff's motion for summary judgment DENIED with respect to these claims.

**D.    Access to Courts**

Plaintiff's complaint alleges that Defendant Jones violated his right to access to the courts by "threatening" Plaintiff to drop his grievances. Dkt. 5, at 36. Defendants

REPORT AND RECOMMENDATION- 41

argue Defendant Jones is entitled to summary judgment because Plaintiff fails to show

actual injury as the record shows he has been able to pursue this action without

impediment. Dkt. 44, at 10.

Prisoners have a constitutional right to access to the courts. *Lewis v. Casey*, 518

U.S. 343, 346 (1996). The right is limited to the filing of direct criminal appeals, habeas

petitions, and civil rights actions. *Id.* at 354. Claims for denial of access to the courts

may arise from the frustration or hindrance of "a litigating opportunity yet to be gained"

(forward-looking access claim) or from the loss of a suit that cannot now be tried

(backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002); *see

also Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) (differentiating "between

two types of access to court claims: those involving prisoners' right to affirmative

assistance and those involving prisoners' rights to litigate without active interference.").

However, a plaintiff must allege "actual injury" as the threshold requirement to

any access to courts claim. *Lewis*, 518 U.S. at 351-53; *Silva*, 658 F.3d at 1104. An

"actual injury" is "actual prejudice with respect to contemplated or existing litigation,

such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at

348; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury

as the "inability to file a complaint or defend against a charge"). The failure to allege an

actual injury is "fatal." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure

to show that a 'non-frivolous legal claim had been frustrated' is fatal.") (quoting *Lewis*,

518 U.S. at 353 & n.4).

REPORT AND RECOMMENDATION- 42

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The record shows that Plaintiff has been able to pursue this § 1983 action and there is no evidence that Defendant Jones' alleged actions have cause him any actual injury in prosecuting his case. Defendant Jones also asserts in his declaration that he did not pressure Plaintiff to drop his grievance. Plaintiff has conceded in his response to the motion that Defendant Jones is entitled to summary judgment with respect to all claims against him and Plaintiff submits no arguments or evidence in opposition to Defendants' motion for summary judgment, or in support of his own motion for summary judgment, that raise a question of fact on this issue.

Accordingly, Defendants' motion for summary judgment should be GRANTED and Plaintiff's motion for summary judgment DENIED with respect to these claims.

**E.    Conditions of Confinement**

Plaintiff alleges Defendant Jones violated his rights by subjecting him to unsanitary conditions during a 48-hour "detox cell" hold on February 27, 2016. Dkt. 48, at 14. Defendants argue that all claims against Defendant Jones relating to Plaintiff's conditions of confinement should be dismissed because Defendant Jones had no control over Plaintiff's conditions of confinement during the subject period. Dkt. 44, at 21.

Defendant Jones states in his declaration that he did not place Plaintiff in a holding cell on February 27, 2016. Dkt. 46, at 5. He further states that Department records show Plaintiff was in the medical unit on February 27, 2016, and that under Department policy, as a CUS, he has no authority to admit or hold someone in medical. *Id.*; Dkt. 46-6 (DOC Policies 320.265 and 610.60). In order to state a claim under 42

REPORT AND RECOMMENDATION- 43

U.S.C. § 1983, Plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or omitting to perform an act which is legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Plaintiff concedes that Defendants' motion for summary judgment should be granted on this issue and presents no facts or evidence in opposition to the motion or in support of his own motion for summary judgment that would raise an issue of fact. Dkt. 49, at 4.

Accordingly, as the undisputed record shows a lack of personal participation on the part of Defendant Jones with respect to the alleged violations, Defendants' motion for summary judgment should be GRANTED and Plaintiff's motion for summary judgment should be DENIED on these claims.

**F.    RLUIPA**

In 2000, Congress passed the Religious Land Use and Institutionalized Persons Act (RLUIPA), which provided heightened protection of religious beliefs to prevent undue barriers to religious observances by persons institutionalized in state or federal institutions. Under RLUIPA, no government "shall impose a substantial burden on the religious exercise of a person residing or confined to [a jail, prison or other correctional facility] ... even if the burden results from a rule of general applicability," unless the

REPORT AND RECOMMENDATION- 44

burden furthers a "compelling governmental interest" and is the "least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a).

RLUIPA does not allow claims against prison officials sued in their individual capacities. *See Wood v. Yordy*, 753 F.3d 899, 901 (9th Cir. 2014) (RLUIPA does not contemplate liability of government employees in individual capacity). A suit against a defendant in his individual capacity "seek[s] to impose *personal* liability upon a government official for actions he takes under color of state law.... Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (internal quotation marks omitted; emphasis added); *see also Community House, Inc. v. City of Boise, Idaho,* 623 F.3d 945, 966–67 (9th Cir. 2010) (an official capacity suit is treated as a suit against the entity). RLUIPA was "enacted pursuant to Congress's spending and commerce powers," *Wood,* 753 F.3d at 902, and applies in relevant part to any "program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc1(b)(1).

The Ninth Circuit has explained that because individual employees are not the governmental "recipients" of federal funds, they are not liable in their individual capacities under RLUIPA. *See Wood,* 753 F.3d at 904 ("[T]here is nothing in the language or structure of RLUIPA to suggest that Congress contemplated liability of government employees in an individual capacity . . .. The statute does not authorize suits against a person in anything other than an official or governmental capacity, for it is only in that capacity that the funds are received."). Here, Plaintiff has explicitly sued

REPORT AND RECOMMENDATION- 45

the defendants in their individual capacities only and therefore his claims under RLUIPA may not be maintained.

Furthermore, the Ninth Circuit has held that RLUIPA claims may proceed only for injunctive relief against defendants acting within their official capacities. *See Wood*, 753 F.3d at 904; *see also Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1114 (9th Cir. 2010) ("The Eleventh Amendment bars [a prisoner's] suit for official-capacity damages under RLUIPA."). Plaintiff's complaint seeks only money damages, not injunctive relief, with respect to his remaining claims. Thus, for this reason as well, Plaintiff's RLUIPA claims may not be maintained.

Accordingly, Defendants' motion for summary judgment should be GRANTED and Plaintiff's motion for summary judgment should be DENIED with respect to Plaintiff's RLUIPA claims.

## G.    Qualified Immunity

Defendants also argue they are entitled to qualified immunity with respect to Plaintiff's claims.

Unless plaintiff makes a two-part showing, qualified immunity shields government officials from liability. The plaintiff must show both: the official(s) violated a federal statutory or constitutional right, and -- at the time of the alleged act or failure to act there was clearly established law that defined the contours of the federal right objectively putting the official(s) on notice – i.e., every reasonable official would understand that what they are doing is unlawful. *Escondido v. Emmons*, 139 S.Ct. 500 (2019); *District of Columbia v. Wesby,* 138 S.Ct. 577, 589 (2018).

REPORT AND RECOMMENDATION- 46

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the plaintiff with respect to central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per curiam). If there is a genuine issue of material fact concerning both: (1) Whether it would be clear to a reasonable officer that their conduct was unlawful under the circumstances they confronted, and (2) Whether the defendant's conduct violated a constitutional right" then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City of Clarkston,* 883 F.3d 865, 871-72 (9ᵗʰ Cir. 2018).

To determine whether there was clearly established law, the Court has stated, "[w]hile there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate"; and the Court has also observed, "there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Wesby,* 138 S.Ct. at 590. A clearly established right exists if "controlling authority or a robust consensus of cases of persuasive authority" have held, on facts that are close or analogous to the current case, that such a right exists. *Hines v. Youseff,* 914 F.3d 1218, 1229 (9th Cir. 2019).

As discussed above, after viewing the facts in the light most favorable to Plaintiff, the Court has found that Defendants are entitled to summary judgment on the merits. Therefore, as Defendants have established the absence of a Constitutional or federal statutory violation, they are also entitled to summary judgment on qualified immunity grounds.

REPORT AND RECOMMENDATION- 47

**H.    *In Forma Pauperis* Status on Appeal**

In forma pauperis status on appeal shall not be granted if the district court certifies "before or after the notice of appeal is filed" "that the appeal is not taken in good faith[.]"  Fed. R. App. P. 24(a)(3)(A); see also 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith" requirement if he seeks review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any arguable basis in law or fact. Gardner v. Pogue, 558 F.2d 548, 551 (9th Cir. 1977); Neitzke v. Williams, 490 U.S. 319, 325 (1989).

Here, as noted above, plaintiff has failed to identify material issues of fact to defeat summary judgment on all of his claims. Accordingly, the undersigned recommends plaintiff's in forma pauperis status be revoked for purposes of any appeal.

## CONCLUSION

Based on the foregoing, the undersigned recommends that Defendants' motion for summary judgment (Dkt. 44) be **GRANTED** in its entirety and Plaintiff's motion for summary judgment (Dkt. 48) be **DENIED** in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the

REPORT AND RECOMMENDATION- 48

matter for consideration on **March 12, 2021,** as noted in the caption.

**DATED** this 24th day of February, 2021.

_Theresa L. Fricke_
Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION- 49